1  CHERYL L. SMOUT
   Environmental Enforcement Section
2  Environment and Natural Resources Division
   U.S. Department of Justice, P.O. Box 7611
3  Washington, DC 20044-7611
   Tel. (202) 514-5466
4  Fax (202) 514.2583
   Virginia State Bar # 26331
5  E-mail: cheryl.smout@usdoj.gov

6  MELINDA HAAG
   United States Attorney
7  JOANN SWANSON
   Chief, Civil Division
8  Office of United States Attorney
   450 Golden Gate Ave., 11th Floor
9  San Francisco, CA 94102
   Tel. (415)436-7200
10
   J. TOM BOER
11 Barg, Coffin Lewis & Trapp
   350 California Street, 22d Floor
12 San Francisco, CA 94104-1435
   Tel. (415) 228-5400
13 E-mail: jtb@bcltlaw.com

14

15

16            IN THE UNITED STATES DISTRICT COURT

17         FOR THE NORTHERN DISTRICT OF CALIFORNIA

18

19 UNITED STATES OF AMERICA,

                Plaintiff,              Civil Action No

20                                      CV12        0471

21        v.

                                        **CONSENT DECREE**

22 COLUMBUS MANUFACTURING, INC.,

23             Defendant.

24

25

26

27

28

RECEIVED

JAN 30 2012

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

COPY

E-filing

DMR

1

915215.1

# TABLE OF CONTENTS

I. JURISDICTION AND VENUE -6-
II. APPLICABILITY -7-
III. DEFINITIONS -8-
IV. CIVIL PENALTY -9-
V. INJUNCTIVE RELIEF -9-
VI. REPORTING REQUIREMENTS -12-
VII. STIPULATED PENALTIES -16-
VIII. FORCE MAJEURE -18-
IX. DISPUTE RESOLUTION -20-
X. INFORMATION COLLECTION AND RETENTION -22-
XI. EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS -24-
XII. COSTS -25-
XIII. NOTICES -25-
XIV. EFFECTIVE DATE -26-
XV. RETENTION OF JURISDICTION -26-
XVI. MODIFICATION -27-
XVII. TERMINATION -27-
XVIII. PUBLIC PARTICIPATION -28-
XIX. SIGNATORIES/SERVICE -28-
XX. INTEGRATION -28-
XXI. FINAL JUDGMENT -29-
XXII. APPENDIX -29-

915215.1

1        CONSENT DECREE

2        Plaintiff United States of America, on behalf of the United States Environmental

3    Protection Agency ("EPA"), has filed a complaint in this action concurrently with this Consent

4    Decree, alleging that Defendant Columbus Manufacturing, Inc. ("Defendant"), violated Section

5    112(r) of the Clean Air Act ("CAA"), 42 U.S.C. § 7412(r)(1), Sections 304 and 312 of the

6    Emergency Preparedness and Community Right-to-Know Act ("EPCRA"), 42 U.S.C. §§ 11004

7    and 11011, and Section 103 of the Comprehensive Environmental Response, Compensation, and

8    Liability Act ("CERCLA"), 42 U.S.C. § 9603, (collectively the "Acts").

9        Defendant does not admit any liability to the United States arising out of the transactions

10   or occurrences alleged in the Complaint.

11       The Parties recognize, and the Court by entering this Consent Decree finds, that this

12   Consent Decree has been negotiated by the Parties in good faith and will avoid litigation between

13   the Parties and that this Consent Decree is fair, reasonable, and in the public interest.

14       RECITALS

15       The United States alleges the following in connection with entering into this Consent

16   Decree:

17       A.      The Complaint against Defendant alleges that it operates a meat processing

18   facility in South San Francisco at 493 Forbes Boulevard, San Mateo County, ("Forbes Facility")

19   and in Hayward at 3190 Corporate Place, Alameda County, California ("Hayward Facility")

20   (jointly referred to as "the Facilities"). Defendant maintained, and currently maintains,

21   refrigeration systems at both of the Facilities and those systems used, and currently uses,

22   anhydrous ammonia.

23       B.      On February 17, 2009, the Forbes Facility experienced a release of approximately

24   217 pounds of anhydrous ammonia from its ammonia refrigeration system.  The release was

25   caused by corrosion of copper/brass fittings connecting stainless steel tubing to a pressure control

26   switch.  After the February 2009 release, Defendant relocated significant portions of its ammonia

27   refrigeration system to the roof from the inside of the Forbes Facility.  During this project,

28   Defendant failed to properly label certain piping and did not undertake a management of change

915215.1

3

1  ("MOC") analysis or conduct a pre-startup safety review ("PSSR") prior to the introduction of

2  anhydrous ammonia into the relocated components.

3       C.     On August 28, 2009, Defendant experienced a second release of anhydrous

4  ammonia from the roof of its Forbes Facility.  At least 200 pounds of anhydrous ammonia were

5  released after a hydrostatic pressure buildup in a valve group ("Valve Group #19") caused the

6  failure of an access flange of the strainer at the inlet to the evaporator pressure regulator.  This

7  failure was caused by a design flaw in the valve group configuration.  The strainer should have

8  been placed in parallel with the adjacent component but instead was placed in a series

9  configuration.

10       D.     After the anhydrous ammonia was released through the access flange of the

11  strainer on Valve Group #19, a contractor of Defendant applied water to the liquid ammonia in an

12  attempt to mitigate the release.  However, this had the effect of exacerbating and increasing the

13  vapor cloud released to the atmosphere.  The gaseous cloud of anhydrous ammonia traveled

14  from the Forbes Facility to the adjacent buildings owned by Genentech, Inc.  Emergency

15  responders from South San Francisco, neighboring communities, and the County of San Mateo

16  responded to the ammonia release, and ordered the evacuation of buildings on the

17  nearby Genentech campus, issued a shelter-in-place order to other local businesses and residents,

18  and closed local roads and nearby on- and off-ramps to U.S. Highway 101 for several hours.  As

19  a result of ammonia exposure, approximately two dozen individuals were medically treated on-

20  site by emergency responders or at local hospitals.

21       E.     The releases of anhydrous ammonia from the Forbes Facility on February 17,

22  2009 and August 28, 2009 were both above the reportable quantity of 100 pounds pursuant to 40

23  C.F.R. § 302.4.  Defendant failed in both instances to notify the National Response Center

24  ("NRC"), or the State Emergency Response Committee ("SERC") for over 5 hours.

25       F.     Section 112(r)(7) of the CAA, 42 U.S.C. § 7412(r)(7), requires owners and

26  operators of stationary sources which use hazardous substances above the regulatory threshold

27  amounts to develop and file a Risk Management Plan ("RMP") with EPA.  The owner or

28  operator of a stationary source must submit an initial RMP by the date on which a regulated

915215.1

1 | substance is first present at the facility above the threshold quantity in a process. 40 C.F.R. §
2 | 68.150(b)(3). The Hayward Facility is a stationary source and anhydrous ammonia is among the
3 | listed hazardous substances in 40 C.F.R. Part 150, with a regulatory threshold amount of 10,000
4 | pounds.
5 |      Defendant acquired the Hayward Facility in March 2007 and shut down the refrigeration
6 | system, removing all ammonia. Defendant initially restarted the system in June 2007 with a
7 | charge of approximately 8,000 pounds of ammonia. Defendant added 3,000 pounds of ammonia
8 | in November 2007, bringing the total charge to 11,000 pounds, but did not submit a new RMP for
9 | the Hayward Facility until October 2008, at least eleven (11) months late.
10 |      G.    The implementing regulations for Section 112(r)(7) of the CAA, 42 U.S.C.
11 | § 7412(r)(7), require the owner or operator of a stationary source to perform a process hazards
12 | analysis ("PHA") to identify, evaluate and control the hazards involved in the facility processes.
13 | The owner or operator must also establish a system to promptly address the findings and
14 | recommendations of the PHA. 40 C.F.R. § 68.67(e). The Defendant completed a PHA in May
15 | of 2007, but as of the April 2010 EPA inspection at the Hayward Facility, Defendant had failed
16 | to establish an adequate system to promptly address the twenty recommendations from the May
17 | 2007 PHA.
18 |      H.    The implementing regulations for Section 112(r)(7) of the CAA, 42 U.S.C.
19 | § 7412(r)(7), require the owner or operator of a stationary source to develop and implement
20 | written operating procedures that provide instructions or steps for conducting activities associated
21 | with a covered process. 40 C.F.R. § 68.68. As of the April 2010 EPA inspection at the Hayward
22 | Facility, EPA concluded that Defendant's written operating procedures failed to provide clear
23 | instructions for the safe operation of the refrigeration system. Moreover, the existing written
24 | operating instructions were not readily accessible to employees because the refrigeration
25 | contractor maintained these documents offsite.
26 |      I.    The implementing regulations for Section 112(r)(7) of the CAA, 42 U.S.C.
27 | § 7412(r)(7), require the owner or operator of a stationary source to establish and implement
28 | written procedures to maintain the ongoing integrity of the process equipment. 40 C.F.R.

915215.1

1   § 68.73(b).  As of the April 2010 EPA inspection at the Hayward Facility, Defendant had no

2   written mechanical integrity procedures on-Site, having relied on its refrigeration contractor to

3   conduct all mechanical integrity activities.

4          J.          Defendant entered into a settlement on January 10, 2011 with the District Attorney

5   for the County of San Mateo, in the case *The People of the State of California v. Columbus*

6   *Manufacturing Inc.*, California Superior Court, No. CIV 502187, in which Defendant agreed inter

7   alia, to develop and implement written operating procedures that provide clear instructions for

8   safely conducting activities associated with its ammonia refrigeration system at the Forbes

9   Facility and to establish and implement written procedures to maintain the on-going integrity of

10  the ammonia refrigeration process equipment.  Defendant also agreed in Section 3.G. of the

11  County settlement, to install (i) certain exterior and interior sensors to detect ammonia releases,

12  (ii) an alarm system, and (iii) a telephone emergency notification system.

13         NOW, THEREFORE, before the taking of any testimony, without the adjudication or

14  admission of any issue of fact or law except as provided in Section I, and with the consent of the

15  Parties, IT IS HEREBY ADJUDGED, ORDERED, AND DECREED as follows:

16                      I.          JURISDICTION AND VENUE

17         1.          This Court has jurisdiction over the subject matter of this action, pursuant to

18  28 U.S.C. §§ 1331, 1345, and 1355, CAA Section 113(b), 42 U.S.C. § 7413(b), CERCLA

19  Section 109(c), 42 U.S.C. § 9609(c), and EPCRA Section 326(b)(1), 42 U.S.C. § 11046(b)(1),

20  over the Parties.  Venue lies in this District pursuant to CAA Section 113(b),

21  42 U.S.C. § 7413(b), CERCLA Section 109(c), 42 U.S.C. § 9609(c), and EPCRA Section

22  325(b)(3), 42 U.S.C. § 11045(b)(3), and 28 U.S.C. §§ 1391 (b) and (c) and 1395(a), because the

23  violations alleged in the Complaint are alleged to have occurred in, and Defendant conducts

24  business in, this judicial district.  For purposes of this Decree, or any action to enforce this

25  Decree, Defendant consents to the Court's jurisdiction over (1) this Decree, (2) the Defendant,

26  and (3) any actions to enforce this Decree, and Defendant consents to venue in this judicial

27  district.

28  ///

915215.1

2.      For purposes of this Consent Decree, Defendant agrees that the Complaint states claims upon which relief may be granted pursuant to Section 112(r) of the CAA, 42 U.S.C. § 7412(r)(1), Sections 304 and 312 of EPCRA, 42 U.S.C. §§ 11004 and 11011, and Section 103 of CERCLA, 42 U.S.C. § 9603.

II.      APPLICABILITY

3.      The obligations of this Consent Decree apply to and are binding upon the United States and upon Defendant and any successors, assigns, or other entities or persons otherwise bound by law.

4.      At least thirty (30) days prior to the transfer of Defendant's business or substantially all of its business assets, or of the Forbes Facility or Hayward Facility, Defendant shall provide a copy of this Consent Decree to the proposed transferee and shall simultaneously provide written notice of the prospective transfer, together with a copy of the proposed written agreement, to EPA Region IX, the United States Attorney for the Northern District of California, and the United States Department of Justice, in accordance with Section XIII of this Decree (Notices). Any attempt to transfer operation and/or Defendant's business or substantially all of its business assets, or the Forbes Facility or Hayward Facility, without complying with this Paragraph constitutes a violation of this Decree. No transfer of operation or of Defendant's lease shall relieve Defendant of its obligation to complete the construction necessary to convert the ammonia refrigeration system at the Forbes Facility to an ammonia glycol-system as required by Paragraph 11.

5.      Defendant shall provide a copy of this Consent Decree to all officers, employees, and agents whose duties might reasonably include compliance with any provision of this Decree, as well as to any contractor retained to perform work required under this Consent Decree. Defendant shall condition any such contract upon performance of the work in conformity with the terms of this Consent Decree.

6.      In any action to enforce this Consent Decree, Defendant shall not raise as a defense the failure by any of its officers, directors, employees, agents, or contractors to take any actions necessary to comply with the provisions of this Consent Decree.

915215.1

### III.   DEFINITIONS

7.     Terms used in this Consent Decree that are defined in the Acts, or in regulations promulgated pursuant to the Acts, shall have the meanings assigned to them in the Acts or such regulations, unless otherwise provided in this Decree.  Whenever the terms set forth below are used in this Consent Decree, the following definitions shall apply:

a.   "Building 2" shall mean the smaller outbuilding, of approximately 3,600 square feet, located at the Forbes Facility.

b.   "Business Day" shall mean each of the days, Monday through Friday, of any given week.

c.   "Complaint" shall mean the complaint filed by the United States in this action;

d.   "Consent Decree" or "Decree" shall mean this Decree and all appendices attached hereto;

e.   "Day" shall mean a calendar day unless expressly stated to be a business day.  In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal holiday, the period shall run until the close of business of the next business day;

f.   "Defendant" shall mean Columbus Manufacturing, Inc.;

g.   "EPA" shall mean the United States Environmental Protection Agency and any of its successor departments or agencies;

h.   "Effective Date" shall have the definition provided in Section XIV;

i.   "Facilities" shall mean Defendant's Forbes Facility and Hayward Facility as defined herein;

j.   "Forbes Facility" shall mean the meat processing plant leased by the Defendant located at 493 Forbes Boulevard, San Mateo County, California;

k.   "Hayward Facility" shall mean the meat processing plant leased by the Defendant at 3190 Corporate Place, Alameda County, California;

l.   "Paragraph" shall mean a portion of this Decree identified by an arabic numeral;

m. "Parties" shall mean the United States and Defendant;

915215.1

1          n.   "Reportable Quantity" shall mean the quantity of a hazardous substance

2   designated at 40 C.F.R. Part 302;

3          o.   "Section" shall mean a portion of this Decree identified by a roman numeral;

4          p.   "United States" shall mean the United States of America, acting on behalf of EPA.

5                              IV.    CIVIL PENALTY

6          8.    Within sixty (60) Days after the Effective Date of this Consent Decree, Defendant

7   shall pay the sum of $685,446 as a civil penalty, together with interest accruing from the date on

8   which the Consent Decree is lodged with the Court, at the rate specified in 28 U.S.C. § 1961 as of

9   the date of lodging.

10         9.    Defendant shall pay the civil penalty due by FedWire Electronic Funds Transfer

11  ("EFT") to the U.S. Department of Justice in accordance with written instructions to be provided

12  to Defendant, following lodging of the Consent Decree, by the Financial Litigation Unit of the

13  U.S. Attorneys Office for the Northern District of California located at Federal Courthouse Floor

14  11, 450 Golden Gate Avenue, San Francisco, CA 94102, telephone number (415) 436-7200.  At

15  the time of payment, Defendant shall send a copy of the EFT authorization form and the EFT

16  transaction record, together with a transmittal letter, which shall state that the payment is for the

17  civil penalty owed pursuant to the Consent Decree in United States v. Columbus Manufacturing,

18  Inc., and shall reference the civil action number and DOJ case number 90-5-2-1-10188, to the

19  United States in accordance with Section XIII of this Decree (Notices); by email to

20  acctsreceivable.CINWD@epa.gov; and by U.S. mail or FedEx to:

21              EPA Cincinnati Finance Office
                26 Martin Luther King Drive
22              Cincinnati, Ohio  45268

23         10.   Defendant shall not deduct any penalties paid under this Decree pursuant to this

24  Section or Section VII (Stipulated Penalties) in calculating its federal income tax.

25                            V.    INJUNCTIVE RELIEF

26         11.   As injunctive relief required by this Decree, Defendant shall convert the current

27  ammonia refrigeration systems at the Forbes Facility to an ammonia-glycol refrigerant system.

28  Defendant shall do so consistent with the requirements specified in the Statement of Work, which

915215.1

is attached as Appendix A and hereby made a part of this Consent Decree, and without material departure from the set of plans titled "Columbus Foods, Forbes Bldg. Glycol Conversion, South San Francisco, California, 730-03906, Revision 5" as submitted to the City of South San Francisco on August 4, 2011 and maintained by the Building Department of the City of South San Francisco (the "Permit Documents"). For the purpose of this Paragraph, any change in the construction of the ammonia refrigeration system from the Permit Documents shall not constitute a "material departure" if it involves a cost change of $300,000 or less, and the new system remains consistent with the requirements otherwise specified in this Decree and the Statement of Work. Any "material departure" from the Permit Documents may be approved in writing by EPA upon request by Columbus. No later than December 15, 2011, the Forbes Facility shall cease using ammonia as the only refrigerant. After December 15, 2011, ammonia shall only be used in a refrigeration system at the Forbes Facility in a manner consistent with the terms of this Decree and Statement of Work. The new ammonia-glycol refrigerant system, which will be completed consistent with the requirements in the Statement of Work by March 15, 2012, shall include the following components:

a.   The ammonia used in the ammonia-glycol system shall be wholly contained within Building 2, and shall not circulate outside of Building 2, and shall be isolated within Building 2;

b.   The ammonia shall be used to chill glycol, or an alternative secondary coolant, which shall circulate throughout the Forbes Facility to provide the cooling function. Acceptable alternative secondary coolants shall be carbon dioxide and any other substance not listed in Table 3 (State Regulated Substances List and Threshold Quantities for Accidental Release Prevention), California Code of Regulations, Title 19, Chapter 4.5, Article 8 § 2770.5 (as may be amended from time to time); and

c.   Defendant shall install a scrubber system to treat Building 2 exhaust in the event of a release of ammonia into the mechanical room in Building 2.

12.   In converting the Forbes Facility refrigeration system to an ammonia-glycol system, and in the conduct of all third-party audits as set forth in paragraph 15 below, Defendant

915215.1

1   shall meet its general duty under Section 112(r)(1) of the Clean Air Act:  (a) to identify hazards

2   which may result from releases of extremely hazardous substances using appropriate hazard

3   assessment techniques; (b) to design and maintain a safe facility taking such steps as are

4   necessary to prevent releases; and (c) to minimize the consequences of accidental releases which

5   do occur.

6        13.    In meeting its duty under Paragraph 12, Defendant shall evaluate whether its

7   ammonia-glycol refrigeration system is in material compliance with relevant industry standards

8   including: (a) the International Institute of Ammonia Refrigeration ("IIAR") "Guidelines for:

9   IIAR Minimum Safety Criteria for a Safe Ammonia Refrigeration System" (Bulletin No. 109,

10  10/97), "Guidelines for:  Start-up, Inspection and Maintenance of Ammonia Mechanical

11  Refrigerating Systems" Bulletin No. 110, 3/903; Guidelines for Identification of Ammonia

12  Refrigeration Piping and System Components" (Bulletin No. 114, 9/91) and  "American National

13  Design Standard:  Equipment, Design, and Installation of Closed-Circuit Ammonia Mechanical

14  Refrigeration Systems" (ANSI/IIAR 2-2008); (c) the American Society of Heating and

15  Refrigerating and Air-Conditioning Engineers ("ASHRAE") "Safety Standard for Refrigeration

16  Systems" Standard 15-2007; (d) the American Society of Mechanical Engineers ("ASME")

17  Refrigeration Piping and Heat Transfer Components (B31.5 – 2010). All of these industry

18  standards relevant and applicable to the operation and maintenance of anhydrous ammonia

19  refrigeration systems shall be referred to as the General Duty Clause Requirements.

20       14.    Defendant shall also comply with the California Accidental Release Prevention

21  ("CalARP") Program Level 3 requirements, pursuant to the California Health and Safety Code

22  sections 25530-25541.5 and Title 19 of the California Code of Regulations, at its Forbes Facility

23  and its Hayward Facility during the term of this Decree.

24       15.    Defendant shall complete third-party audits of its compliance with EPCRA

25  Section 312, CalARP and General Duty Clause Requirements with regard to the refrigeration

26  system at the Forbes Facility on the following schedule: (i) no later than sixty (60) days after

27  converting the Forbes Facility's refrigeration system to an ammonia-glycol system; and (ii)

28  between eighteen (18) and twenty-four (24) months after completion of the first audit.  The

915215.1

1    following requirements shall apply to the auditing required by this Paragraph:

2          a.   Defendant shall submit the name of the third party auditor and its qualifications to

3    EPA for its approval at least two (2) weeks prior to conducting a required audit;

4          b.   Within fifteen (15) days after its receipt of the third-party audit, Defendant will

5    provide EPA with a copy of the audit.  No later than sixty (60) days after its receipt of the third-

6    party audit, Defendant will provide EPA with Defendant's response to the audit findings, and

7    Defendant's plan for implementation of specific action(s) in response to the audit findings; and

8          c.   Within thirty (30) days after receipt of Defendant's audit and response, EPA will

9    either approve the Defendant's submittals in Paragraph 15(b) or disapprove the submittals and

10   provide reasons for the disapproval.  If EPA disapproves all or a portion of the submittals,

11   Defendant shall submit revised submittals for any disapproved documents within forty-five (45)

12   days.  In the event that EPA disapproves any portion of a submittal by the Defendant, EPA shall

13   make staff available to discuss the basis for the disapproval with the Defendant within twenty

14   (20) days of the written disapproval.

15        16.    Permits.  Where any compliance obligation under this Section requires Defendant

16   to obtain a federal, state, or local permit or approval, Defendant shall submit timely and complete

17   applications and take all other actions necessary to obtain all such permits or approvals.

18   Defendant may seek relief under the provisions of Section VIII of this Consent Decree (Force

19   Majeure) for any delay in the performance of any such obligation resulting from a failure to

20   obtain, or a delay in obtaining, any permit or approval required to fulfill such obligation, if

21   Defendant has submitted timely and complete applications and has taken all other actions

22   necessary to obtain all such permits or approvals.

23                      VI.  REPORTING REQUIREMENTS

24        17.    Beginning January 1, 2012, and continuing quarterly until one quarter after

25   completion of the ammonia-glycol project construction required by Paragraph 11, Defendant

26   shall submit a report documenting: (i) the completion of the ammonia/glycol project at the Forbes

27   Facility or, in the alternative, the status of the construction and/or other measures required by the

28   Statement of Work and a project schedule showing the anticipated date of completion; (ii)

915215.1

12

1   problems encountered or anticipated in connection with implementation of the Statement of

2   Work, together with implemented or proposed solutions; and (iii) a description of any non-

3   compliance with the requirements of this Consent Decree and an explanation of the violations

4   likely cause and of the remedial steps taken, or to be taken, to prevent or minimize such violation.

5       18.   Within sixty (60) Days after the Effective Date, Defendant shall provide to EPA

6   the most recent Process Hazard Analysis conducted at its Hayward Facility and an itemized list

7   of when and how the Defendant has addressed or will address each of the hazards identified in

8   the Process Hazard Analysis.

9       19.   No later than January 31, 2012, Defendant shall submit a report to EPA

10  documenting that it has complied with all of the requirements identified at paragraph 3.G of its

11  settlement with the County of San Mateo, *The People of the State of California v. Columbus*

12  *Manufacturing Inc.*, Stipulation for Entry of Final Judgment, CIV 502187 entered on January 10,

13  2011, regarding exterior and interior sensors, the ammonia alarm system, and the telephone

14  emergency notification system at the Forbes Facility.

15      20.   Within one hundred and eighty (180) Days after the final report required by

16  Paragraph 17, and continuing until the earlier of (i) termination of this Decree pursuant to Section

17  XVIII or (ii) Defendant ceases to use ammonia in a refrigeration system at the Forbes Facility,

18  Defendant shall submit an electronic semi-annual report for the preceding 6 months that shall

19  include the following summaries: status of any permit applications relevant to the ammonia-

20  glycol system; reports or submissions to San Mateo County relevant to the ammonia-glycol

21  system; the status of implementation of actions taken or to be taken in response to a third party

22  audit report's findings and/or recommendation pursuant to Paragraph 15 above; and a description

23  of any non-compliance with the requirements of this Consent Decree and an explanation of the

24  violations likely cause and of the remedial steps taken, or to be taken, to prevent or minimize

25  such violation.  A report shall not be required under this Paragraph if the Defendant submits an

26  audit report, pursuant to the requirement in Paragraph 15, within sixty (60) days prior to the date

27  on which a report under this Paragraph would otherwise be due.

28  ///

915215.1

21.     If Defendant violates, or has reason to believe that it may violate, any requirement of this Consent Decree, Defendant shall notify the United States of such violation and its likely duration, in writing, within ten business days of the Day Defendant first becomes aware of the violation, with an explanation of the violation's likely cause and of the remedial steps taken, or to be taken, to prevent or minimize such violation. If the cause of a violation cannot be fully explained at the time the report is due, Defendant shall so state in the report. Defendant shall investigate the cause of the violation and shall then submit an amendment to the report, including a full explanation of the cause of the violation, within thirty (30) Days of the Day Defendant becomes aware of the cause of the violation. Nothing in this Paragraph or the following Paragraph relieves Defendant of its obligation to provide the notice required by Section VIII of this Consent Decree (Force Majeure).

22.     Whenever any violation of this Consent Decree or any other event affecting Defendant's performance under this Decree, or the performance of its Facilities in connection with the presence of ammonia, may pose an immediate threat to the public health or welfare or the environment, Defendant shall notify EPA orally or by electronic or facsimile transmission as soon as possible, but no later than twenty-four (24) hours after Defendant first knew of the violation or event. This procedure is in addition to the requirements set forth in the preceding Paragraph.

23.     All reports required by this Consent Decree shall be submitted either electronically or in writing to the persons designated in Section XIII of this Consent Decree (Notices).

24.     Approval of Deliverables. After review of any plan, report, or other item that is required to be submitted pursuant to this Consent Decree, EPA may in writing or electronically: a) approve the submission; b) approve the submission upon specified conditions; c) approve part of the submission and disapprove the remainder; or d) disapprove the submission.

25.     If the submission is approved pursuant to Paragraph 24.a, Defendant shall take all actions required by the plan, report, or other document, in accordance with the schedules and requirements of the plan, report, or other document, as approved. If the submission is

conditionally approved or approved only in part, pursuant to Paragraph 24.b or .c, Defendant shall, upon written direction from EPA, take all actions required by the approved plan, report, or other item that EPA determines are technically severable from any disapproved portions, subject to Defendant's right to dispute only the specified conditions or the disapproved portions, under Section IX of this Decree (Dispute Resolution).

26.    If the submission is disapproved in whole or in part pursuant to Paragraph 24.c or d, Defendant shall, within forty-five (45) Days or such other time as the Parties agree to in writing, correct all deficiencies and resubmit the plan, report, or other item, or disapproved portion thereof, for approval, in accordance with the preceding Paragraphs. If the resubmission is approved in whole or in part, Defendant shall proceed in accordance with the preceding Paragraph.

27.    Any stipulated penalties applicable to the original submission, as provided in Section VII of this Decree, shall accrue during the forty-five (45) Day period or other specified period, but shall not be payable unless the resubmission is untimely or is disapproved in whole or in part; provided that, if the original submission was so deficient as to constitute a material breach of Defendant's obligations under this Decree, the stipulated penalties applicable to the original submission shall be due and payable notwithstanding any subsequent resubmission.

28.    If a resubmitted plan, report, or other item, or portion thereof, is disapproved in whole or in part, EPA may again require Defendant to correct any deficiencies, in accordance with the preceding Paragraphs, subject to Defendant's right to invoke Dispute Resolution and the right of EPA to seek stipulated penalties as provided in the preceding Paragraphs.

29.    Each report submitted by Defendant under this Section shall be signed by an official of the submitting party and include the following certification:

> I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted. Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

915215.1

1    This certification requirement does not apply to emergency or similar notifications where
2  compliance would be impractical.

3    30.    The reporting requirements of this Consent Decree do not relieve Defendant of
4  any reporting obligations required by EPCRA and CERCLA or implementing regulations, or by
5  any other federal, state, or local law, regulation, permit, or other requirement.

6    31.    Any information provided pursuant to this Consent Decree may be used by the
7  United States in any proceeding to enforce the provisions of this Consent Decree and as
8  otherwise permitted by law.

9                        VII.    STIPULATED PENALTIES

10    32.    Defendant shall be liable for stipulated penalties to the United States for violations
11  of this Consent Decree as specified below, unless excused under Section VIII
12  (Force Majeure). A violation includes failing to perform any obligation required by the terms of
13  this Decree, including any work plan or schedule approved under this Decree, according to all
14  applicable requirements of this Decree and within the specified time schedules established by or
15  approved under this Decree.

16    33.    Late Payment of Civil Penalty

17    If Defendant fails to pay the civil penalty required to be paid under Section IV of this
18  Decree (Civil Penalty) when due, Defendant shall pay a stipulated penalty of $3,000 per Day for
19  each Day that the payment is late for the first five (5) Business Days. Thereafter, Defendant shall
20  pay a stipulated penalty of $5,000 per Day for each Day that the payment is late

21    34.    Injunctive Relief

22    The following stipulated penalties shall accrue per violation per Day for each violation of
23  Paragraphs 11 and 15 of Section V. and the requirements therein pertaining to implementation of
24  the new ammonia/glycol refrigerant system and conduct of the third-party compliance audit:

25

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $500 | 1st through 14th Day |
| $1,500 | 15th through 30th Day |
| $2,000 | 31st Day and beyond |

35.   <u>Reporting Requirements</u>. The following stipulated penalties shall accrue per violation per Day for each violation of the reporting requirements of Section VI of this Consent Decree:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $250 | 1st through 14th Day |
| $1,000 | 15th through 30th Day |
| $1,500 | 31st Day and beyond |

36.   Stipulated penalties under this Section shall begin to accrue after performance is due or on the Day a violation occurs, whichever is applicable, and shall continue to accrue until performance is satisfactorily completed or until the violation ceases. Stipulated penalties shall accrue simultaneously for separate violations of this Consent Decree.

37.   Defendant shall pay any stipulated penalty within thirty (30) Days of receiving the United States' written demand.  The United States may in the unreviewable exercise of its discretion, reduce or waive stipulated penalties otherwise due it under this Consent Decree.

38.   Stipulated penalties shall continue to accrue during any Dispute Resolution, but need not be paid until the following:

a.   If the dispute is resolved by agreement or by a decision of EPA that is not appealed to the Court, Defendant shall pay accrued penalties determined to be owing, together with interest, to the United States within thirty (30) Days of the effective date of the agreement or the receipt of EPA's decision or order.

b.   If the dispute is appealed to the Court and the United States prevails, in whole or in part, Defendant shall pay all accrued penalties determined by the Court to be owing, together with interest, within sixty (60) Days of receiving the Court's decision or order, except as provided in subparagraph c, below.

c.   If any Party appeals the District Court's decision, Defendant shall pay all accrued penalties determined to be owing, together with interest, within 15 Days of receiving the final appellate court decision.

39.   Upon the Effective Date of this Consent Decree, the stipulated penalty provisions

915215.1

17

1   in Paragraphs 34 and 35 shall be retroactively enforceable with regard to any violation that has

2   occurred prior to the Effective Date of the Consent Decree, provided that stipulated penalties that

3   may have accrued prior to the Effective Date may not be collected unless and until this Consent

4   Decree is entered by the Court.

5       40.     Defendant shall pay stipulated penalties owing to the United States in the manner

6   set forth and with the confirmation notices required by Paragraph 9, except that the transmittal

7   letter shall state that the payment is for stipulated penalties and shall state for which violation(s)

8   the penalties are being paid.

9       41.     If Defendant fails to pay stipulated penalties according to the terms of this

10  Consent Decree, Defendant shall be liable for interest on such penalties, as provided for in

11  28 U.S.C. § 1961, accruing as of the date payment became due.  Nothing in this Paragraph shall

12  be construed to limit the United States from seeking any remedy otherwise provided by law for

13  Defendant's failure to pay any stipulated penalties.

14      42.     Subject to the provisions of Section XI of this Consent Decree (Effect of

15  Settlement/Reservation of Rights), the stipulated penalties provided for in this Consent Decree

16  shall be in addition to any other rights, remedies, or sanctions available to the United States for

17  Defendant's violation of this Consent Decree or applicable law.  Where a violation of this

18  Consent Decree is also a violation of relevant statutory or regulatory requirements, Defendant

19  shall be allowed a credit, for any stipulated penalties paid, against any statutory penalties

20  imposed for such violation.

21                          VIII.   FORCE MAJEURE

22      43.     "Force majeure," for purposes of this Consent Decree, is defined as any event

23  arising from causes beyond the control of Defendant, of any entity controlled by Defendant, or of

24  Defendant's contractors, that delays or prevents the performance of any obligation under this

25  Consent Decree despite Defendant's best efforts to fulfill the obligation.  The requirement that

26  Defendant exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate

27  any potential force majeure event and best efforts to address the effects of any such event (a) as it

28  is occurring and (b) after it has occurred to prevent or minimize any resulting delay to the

915215.1

1    greatest extent possible. "Force Majeure" does not include Defendant's financial inability to

2    perform any obligation under this Consent Decree.

3            44.     If any event occurs or has occurred that may delay the performance of any

4    obligation under this Consent Decree, whether or not caused by a force majeure event, Defendant

5    shall provide notice orally or by electronic transmission to EPA, in accordance with Section XIII

6    of this Consent Decree (Notices), within three (3) Business Days of when Defendant first knew

7    that the event might cause a delay.  Within seven (7) Business Days thereafter, Defendant shall

8    provide in writing to EPA an explanation and description of the reasons for the delay; the

9    anticipated duration of the delay; all actions taken or to be taken to prevent or minimize the

10   delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay

11   or the effect of the delay; Defendant's rationale for attributing such delay to a force majeure

12   event if it intends to assert such a claim; and a statement as to whether, in the opinion of

13   Defendant, such event may cause or contribute to an endangerment to public health, welfare or

14   the environment.  EPA may, in its unreviewable discretion, extend the time within which notice

15   must be given, provided that such extension is in writing. Defendant shall include with any notice

16   all available documentation supporting the claim that the delay was attributable to a force

17   majeure. Failure to comply with the above requirements shall preclude Defendant from asserting

18   any claim of force majeure for that event for the period of time of such failure to comply, and for

19   any additional delay caused by such failure.  Defendant shall be deemed to know of any

20   circumstance of which Defendant, any entity controlled by Defendant, or Defendant's contractors

21   knew or should have known.

22           45.     If EPA agrees that the delay or anticipated delay is attributable to a force majeure

23   event, time for performance of the obligations under this Consent Decree that are affected by

24   the force majeure event will be extended by EPA for such time as is necessary to complete those

25   obligations.  An extension of the time for performance of the obligations affected by the force

26   majeure event shall not, of itself, extend the time for performance of any other obligation.  EPA

27   will notify Defendant in writing of the length of the extension, if any, for performance of the

28   obligations affected by the force majeure event.

915215.1

46.     If EPA does not agree that the delay or anticipated delay has been or will be caused by a force majeure event, EPA will notify Defendant in writing of its decision.

47.     If Defendant elects to invoke the dispute resolution procedures set forth in Section IX (Dispute Resolution), it shall do so no later than fifteen (15) Days after receipt of EPA's notice. In any such proceeding, Defendant shall have the burden of demonstrating by a preponderance of the evidence that the delay or anticipated delay has been or will be caused by a force majeure event, that the duration of the delay or the extension sought was or will be warranted under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and that Defendant complied with the requirements of Paragraphs 43 and 44, above. If Defendant carries this burden, the delay at issue shall be deemed not to be a violation by Defendant of the affected obligation of this Consent Decree identified to EPA and the Court.

IX.     DISPUTE RESOLUTION

48.     Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Consent Decree. Defendant's failure to seek resolution of a dispute under this Section shall preclude Defendant from raising any such issue as a defense to an action by the United States to enforce any obligation of Defendant arising under this Decree.

49.     Informal Dispute Resolution. Any dispute subject to Dispute Resolution under this Consent Decree shall first be the subject of informal negotiations. The dispute shall be considered to have arisen when Defendant sends the United States a written Notice of Dispute. Such Notice of Dispute shall state clearly the matter in dispute. The period of informal negotiations shall not exceed twenty (20) Days from the date the dispute arises, unless that period is modified by written agreement. If the Parties cannot resolve a dispute by informal negotiations, then the position advanced by the United States shall be considered binding unless, within thirty (30) Days after the conclusion of the informal negotiation period, Defendant invokes formal dispute resolution procedures as set forth below.

50.     Formal Dispute Resolution. Defendant shall invoke formal Dispute Resolution procedures, within the time period provided in the preceding Paragraph, by serving on the United

915215.1

States a written Statement of Position regarding the matter in dispute.  The Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting Defendant's position and any supporting documentation relied upon by Defendant.

51.    The United States shall serve its Statement of Position within forty-five (45) Days of receipt of Defendant's Statement of Position.  The United States Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting that position and any supporting documentation relied upon by the United States.  The United States Statement of Position shall be binding on Defendant, unless Defendant files a motion for judicial review of the dispute in accordance with the following Paragraph.

52.    Defendant may seek judicial review of the dispute by filing with the Court and serving on the United States, in accordance with Section XIII of this Consent Decree (Notices), a motion requesting judicial resolution of the dispute.  The motion must be filed within fifteen (15) Days of receipt of the United States' Statement of Position pursuant to the preceding Paragraph. The motion shall contain a written statement of Defendant's position on the matter in dispute, including any supporting factual data, analysis, opinion, or documentation, and shall set forth the relief requested and any schedule within which the dispute must be resolved for orderly implementation of the Consent Decree.

53.    The United States shall respond to Defendant's motion within the time period allowed by the Local Rules of this Court or as provided by Court Order.  Defendant may file a reply memorandum, to the extent permitted by the Local Rules or allowed by Court Order.

54.    <u>Standard of Review</u>

a.    <u>Disputes Concerning Matters Accorded Record Review</u>.  Except as otherwise provided in this Consent Decree, in any dispute brought under Paragraph 50 pertaining to the adequacy or appropriateness of plans, procedures to implement plans, schedules or any other items requiring approval by EPA under this Consent Decree; the adequacy of the performance of work undertaken pursuant to this Consent Decree; and all other disputes that are accorded review on the administrative record under applicable principles of administrative law, Defendant shall have the burden of demonstrating, based on the administrative record, that the

1    position of the United States is arbitrary and capricious or otherwise not in accordance with law.

2         b.    Other Disputes.  Except as otherwise provided in this Consent Decree, in

3    any other dispute brought under Paragraph 50, Defendant shall bear the burden of demonstrating

4    that its position complies with this Consent Decree and better further the objectives of the

5    Consent Decree.

6         55.    The invocation of dispute resolution procedures under this Section shall not, by

7    itself, extend, postpone, or affect in any way any obligation of Defendant under this Consent

8    Decree, unless and until final resolution of the dispute so provides.  Stipulated penalties with

9    respect to the disputed matter shall continue to accrue from the first Day of noncompliance, but

10   payment shall be stayed pending resolution of the dispute as provided in Paragraph 38.

11   If Defendant does not prevail on the disputed issue, stipulated penalties shall be assessed and paid

12   as provided in Section VII (Stipulated Penalties).

13        X.    INFORMATION COLLECTION AND RETENTION

14        56.    The United States and its representatives, including attorneys, contractors, and

15   consultants, shall have the right of entry into either Facility covered by this Consent Decree, at all

16   reasonable times, upon presentation of credentials, to:

17        a.    monitor the progress of activities required under this Consent Decree;

18        b.    verify any data or information submitted to the United States in accordance

19   with the terms of this Consent Decree;

20        c.    obtain documentary evidence related to compliance with this Decree,

21   including photographs and similar data; and

22        d.    assess Defendant's compliance with this Consent Decree.

23        57.    Until three (3) years after the termination of this Consent Decree, Defendant shall

24   retain, and shall instruct its contractors and agents to preserve all non-identical copies of all

25   documents, records, or other information (including documents, records, or other information in

26   electronic form) in its or its contractors' or agents' possession or control, or that come into its or

27   its contractors' or agents' possession or control, and that relate to Defendant's performance of its

28   obligations under this Consent Decree.  This information retention requirement shall apply

915215.1

22

1    regardless of any contrary corporate or institutional policies or procedures.  At any time during

2    this information-retention period, upon request by the United States, Defendant shall provide

3    copies of any non-privileged documents, records, or other information required to be maintained

4    under this Paragraph.

5         58.    At the conclusion of the information-retention period provided in the preceding

6    Paragraph, Defendant shall notify the United States at least ninety (90) Days prior to the

7    destruction of any documents, records, or other information subject to the requirements of the

8    preceding Paragraph and, upon request by the United States, Defendant shall deliver any such

9    documents, records, or other information to EPA.  Defendant may assert that certain documents,

10   records, or other information is privileged under the attorney-client privilege or any other

11   privilege recognized by federal law.  If Defendant asserts such a privilege, it shall provide the

12   following:  (1) the title of the document, record, or information; (2) the date of the document,

13   record, or information; (3) the name and title of each author of the document, record, or

14   information; (4) the name and title of each addressee and recipient; (5) a description of the

15   subject of the document, record, or information; and (6) the privilege asserted by Defendant.

16   However, no documents, records, or other information created or generated pursuant to the

17   requirements of this Consent Decree shall be withheld on grounds of privilege.

18        59.    Defendant may also assert that information required to be provided under this

19   Section is protected as Confidential Business Information ("CBI") under 40 C.F.R. Part 2.  As to

20   any information that Defendant seeks to protect as CBI, Defendant shall follow the procedures

21   set forth in 40 C.F.R. Part 2.

22        60.    This Consent Decree in no way limits or affects any right of entry and inspection,

23   or any right to obtain information, held by the United States pursuant to applicable federal laws,

24   regulations, or permits, nor does it limit or affect any duty or obligation of Defendant to maintain

25   documents, records, or other information imposed by applicable federal or state laws, regulations,

26   or permits.

27   ///

28   ///

915215.1

XI.   EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS

61.   This Consent Decree resolves the civil claims of the United States for the violations alleged in the Complaint filed in this action through the date of lodging.

62.   The United States reserves all legal and equitable remedies available to enforce the provisions of this Consent Decree, except as expressly stated in Paragraph 61. This Consent Decree shall not be construed to limit the rights of the United States to obtain penalties or injunctive relief under the Act or implementing regulations, or under other federal laws, regulations, or permit conditions, except as expressly specified in Paragraph 61. The United States further reserves all legal and equitable remedies to address any imminent and substantial endangerment to the public health or welfare or the environment arising at, or posed by, Defendant's Facilities, whether related to the violations addressed in this Consent Decree or otherwise.

63.   In any subsequent administrative or judicial proceeding initiated by the United States for injunctive relief, civil penalties, other appropriate relief relating to the Facilities, Defendant shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States in the subsequent proceeding were or should have been brought in the instant case, except with respect to claims that have been specifically resolved pursuant to Paragraph 61 of this Section.

64.   This Consent Decree is not a permit, or a modification of any permit, under any federal, state, or local laws or regulations. Defendant is responsible for achieving and maintaining complete compliance with all applicable federal, state, and local laws, regulations, and permits; and Defendant's compliance with this Consent Decree shall be no defense to any action commenced pursuant to any such laws, regulations, or permits, except as set forth herein. The United States does not, by its consent to the entry of this Consent Decree, warrant or aver in any manner that Defendant's compliance with any aspect of this Consent Decree will result in compliance with provisions of the Acts alleged by Plaintiff herein, or with any other provisions of federal, state, or local laws, regulations, or permits.

915215.1

65.     This Consent Decree does not limit or affect the rights of Defendant or of the United States against any third parties, not party to this Consent Decree, nor does it limit the rights of third parties, not party to this Consent Decree, against Defendant, except as otherwise provided by law.

66.     This Consent Decree shall not be construed to create rights in, or grant any cause of action to, any third party not party to this Consent Decree.

XII.     COSTS

67.     The Parties shall bear their own costs of this action, including attorneys fees, except that the United States shall be entitled to collect the costs (including attorneys fees) incurred in any action necessary to collect any portion of the civil penalty or any stipulated penalties due but not paid by Defendant.

XIII.     NOTICES

68.     Unless otherwise specified herein, whenever notifications, submissions, or communications are required by this Consent Decree, they shall be made in writing and addressed as follows:

To the United States:

> Chief, Environmental Enforcement Section
> Environment and Natural Resources Division
> U.S. Department of Justice
> Box 7611 Ben Franklin Station
> Washington, D.C.  20044-7611
> Re: DOJ No. 90-5-2-1-10188
> cheryl.smout@usdoj.gov

> Thanne Cox
> U.S. Environmental Protection Agency Region IX
> Mail Code ORC-3
> 75 Hawthorne Street
> San Francisco, CA 94117
> Cox.elizabeth@epa.gov

To EPA:

> Jeremy Johnstone
> U.S. Environmental Protection Agency Region XI
> Mail Code SFD-9-3
> 75 Hawthorne Street
> San Francisco, CA 94105
> Johnstone.jeremy@epa.gov

915215.1

To Defendant:

        Tim Fallon
        Chief Executive Officer/President
        Columbus Manufacturing
        30977 San Antonio Street
        Hayward, CA 94544
        tfallon@COLUMCO.COM

        Doug Bame
        Director of Engineering
        Columbus Manufacturing
        30977 San Antonio Street
        Hayward, CA 94544
        dbame@COLUMCO.COM

        Tom Boer
        Barg Coffin Lewis & Trapp
        350 California Street, 22d Floor
        San Francisco, California 94104
        jtb@bcltlaw.com

69.     Any Party may, by written notice to the other Parties, change its designated notice recipient or notice address provided above.

70.     Notices submitted pursuant to this Section shall be deemed submitted upon mailing, unless otherwise provided in this Consent Decree or by mutual agreement of the Parties in writing.

XIV.   EFFECTIVE DATE

71.     The Effective Date of this Consent Decree shall be the date upon which this Consent Decree is entered by the Court or a motion to enter the Consent Decree is granted, whichever occurs first, as recorded on the Court's docket; provided, however, that Defendant hereby agrees that it shall be bound to perform duties scheduled to occur prior to the Effective Date. In the event the United States withdraws or withholds consent to this Consent Decree before entry, or the Court declines to enter the Consent Decree, then the preceding requirement to perform duties scheduled to occur before the Effective Date shall terminate.

XV.   RETENTION OF JURISDICTION

72.     The Court shall retain jurisdiction over this case until termination of this Consent Decree, for the purpose of resolving disputes arising under this Decree or entering orders modifying this Decree, pursuant to Sections IX and XVI, or effectuating or enforcing compliance with the terms of this Decree.

915215 1

## XVI. MODIFICATION

73.     The terms of this Consent Decree, including any attached appendices, may be modified only by a subsequent written agreement signed by all the Parties. Where the modification constitutes a material change to this Decree, it shall be effective only upon approval by the Court.

74.     Any disputes concerning modification of this Decree shall be resolved pursuant to Section IX of this Decree (Dispute Resolution), provided, however, that, instead of the burden of proof provided by Paragraph 54, the Party seeking the modification bears the burden of demonstrating that it is entitled to the requested modification in accordance with Federal Rule of Civil Procedure 60(b).

## XVII. TERMINATION

75.     After Defendant has completed the requirements of Section V (Injunctive Relief) of this Decree, has thereafter maintained satisfactory compliance with this Consent Decree for six (6) months following the completion of the third-party audits and has paid the civil penalty and any accrued stipulated penalties as required by this Consent Decree, Defendant may serve upon the United States a Request for Termination, stating that Defendant has satisfied these requirements, together with supporting documentation.

76.     Following receipt by the United States of Defendant's Request for Termination, the Parties shall confer informally concerning the Request and any disagreement that the Parties may have as to whether Defendant has satisfactorily complied with the requirements for termination of this Consent Decree. If the United States agrees that the Decree may be terminated, the Parties shall submit, for the Court's approval, a joint stipulation terminating the Decree.

77.     If the United States does not agree that the Decree may be terminated, Defendant may invoke Dispute Resolution under Section IX of this Decree. However, Defendant shall not seek Dispute Resolution of any dispute regarding termination, under Paragraph 50 of Section IX, until thirty (30) days after service of its Request for Termination.

///

915215.1

1

### XVIII. PUBLIC PARTICIPATION

2    78.    This Consent Decree shall be lodged with the Court for a period of not less than

3    thirty (30) Days for public notice and comment in accordance with 28 C.F.R. § 50.7. The United

4    States reserves the right to withdraw or withhold its consent if the comments regarding the

5    Consent Decree disclose facts or considerations indicating that the Consent Decree is

6    inappropriate, improper, or inadequate. Defendant consents to entry of this Consent Decree

7    without further notice and agrees not to withdraw from or oppose entry of this Consent Decree by

8    the Court or to challenge any provision of the Decree, unless the United States has notified

9    Defendant in writing that it no longer supports entry of the Decree.

10

### XIX.   SIGNATORIES/SERVICE

11    79.    Each undersigned representative of Defendant and the Assistant Attorney General

12    for the Environment and Natural Resources Division of the Department of Justice certifies that he

13    or she is fully authorized to enter into the terms and conditions of this Consent Decree and to

14    execute and legally bind the Party he or she represents to this document.

15    80.    This Consent Decree may be signed in counterparts, and its validity shall not be

16    challenged on that basis. Defendant agrees to accept service of process by mail with respect to

17    all matters arising under or relating to this Consent Decree and to waive the formal service

18    requirements set forth in Rules 4 and 5 of the Federal Rules of Civil Procedure and any

19    applicable Local Rules of this Court including, but not limited to, service of a summons.

20

### XX.   INTEGRATION

21    81.    This Consent Decree constitutes the final, complete, and exclusive agreement and

22    understanding among the Parties with respect to the settlement embodied in the Decree and

23    supercedes all prior agreements and understandings, whether oral or written, concerning the

24    settlement embodied herein. Other than deliverables that are subsequently submitted and

25    approved pursuant to this Decree, no other document, nor any representation, inducement,

26    agreement, understanding, or promise, constitutes any part of this Decree or the settlement it

27    represents, nor shall it be used in construing the terms of this Decree.

28    ///

915215.1

XXI.   FINAL JUDGMENT

82.    Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment of the Court as to the United States and Defendant.

XXII.   APPENDIX

83.    The following appendices are attached to and part of this Consent Decree: Appendix A is the Statement of Work.

Dated and entered this _____ 14th _____ day of _____ March _____, 2012 ____.



UNITED S_____ _____CT JUDGE
_____California

IT IS SO ORDERED

Judge Edward M. Chen

915215.1

29

THE UNDERSIGNED PARTIES enter into this Consent Decree in the Matter of United States of America v. Columbus Manufacturing, Inc. (N.D.Ca.) Civil Action No. _____

FOR PLAINTIFF UNITED STATES OF AMERICA:


IGNACIA S. MORENO
Assistant Attorney General
Environment and Natural Resources
     Division
U.S. Department of Justice
Washington, D.C. 20530


CHERYL L. SMOUT
Environmental Enforcement Section
Environment and Natural Resources
     Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C.  20044-7611
Phone 202.514.5466

915215.1

THE UNDERSIGNED PARTIES enter into this Consent Decree in the Matter of United States of America v. Columbus Manufacturing, Inc. (N.D.Ca.) Civil Action No. _____

FOR THE PLAINTIFF UNITED STATES:


_____
JARED BLUMENFELD
Regional Administrator
Region IX
U.S. Environmental Protection Agency
75 Hawthorne Street
San Francisco, CA 94105


_____
NANCY MARVEL
Regional Counsel
Region IX
U.S. Environmental Protection Agency
75 Hawthorne Street
San Francisco, CA 94105


_____
THANNE COX
Attorney-Adviser
U.S. Environmental Protection Agency
75 Hawthorne Street
San Francisco, CA 94105

31

THE UNDERSIGNED PARTIES enter into this Consent Decree in the Matter of United States of America v. Columbus Manufacturing, Inc. (N.D.Ca.) Civil Action No. _____.

FOR THE PLAINTIFF UNITED STATES:


_____
CYNTHIA GILES
Assistant Administrator
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency
1200 Pennsylvania Avenue, NW
Washington, D.C. 20460


_____
PAMELA J.MAZAKAS
Acting Director, Office of Civil Enforcement
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency
1200 Pennsylvania Avenue, NW
Washington, D.C. 20460


_____
ROSEMARIE A. KELLEY
Director, Waste and Chemical Enforcement Division
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency
1200 Pennsylvania Avenue, NW
Washington, D.C. 20460

32

1   THE UNDERSIGNED PARTIES enter into this Consent Decree in the Matter of United States of
2   America v. Columbus Manufacturing, Inc. (N.D.Ca.) Civil Action No. _____ __

3
    FOR DEFENDANT COLUMBUS MANUFACTURING INC.
4

5

6   *Timothy G. Fallon*
    Timothy G. Fallon
7   Chief Executive Officer/President
    Columbus Foods
8   30977 San Antonio Street
    Hayward, CA 94544
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27                              33

28

                                                          915215.1

Appendix A

Consent Decree in *United States v. Columbus Manufacturing, Inc.*

STATEMENT OF WORK
COLUMBUS MANUFACTURING INC.

FORBES FACILITY AMMONIA – GLYCOL REFRIGERATION SYSTEM

**The ammonia-glycol system required as injunctive relief by Paragraphs 11 - 14 of the Consent Agreement shall include, at a minimum, the following components or be consistent with the following provisions:**

A.    Project Description

Columbus Manufacturing Inc. (CMI) shall convert the existing Building 1 ammonia refrigeration systems at its Forbes Ave. South San Francisco facility to a system utilizing both ammonia and glycol in which the ammonia used in the new system shall be wholly contained within the Building 2 mechanical room, and will not circulate outside of that location (with the exception of minor amounts of piping interconnecting the fire department emergency diffusion panel and vent piping to the diffusion tank).  The ammonia in the Building 2 mechanical room will be used to chill glycol, which will circulate throughout the facility (both Buildings 1 & 2) to provide the cooling function. The ammonia in the Building 2 mechanical room will be isolated from the environment by the building enclosure itself.  In the event of a detected release, the normal mechanical ventilation system will cease to function and an emergency scrubbing system will be activated.  This scrubbing system will remove ammonia from the airstream using water and chemicals.  The air discharged from the scrubber will have an ammonia concentration of 50ppm or less; and the water/effluent will be collected in a holding tank for later disposal.  Should the scrubber air discharge exceed the 50ppm concentration, the scrubber will be stopped and Building 2 will be isolated completely from the environment using a system of dampers and louvers. Finally, CMI shall install and operate an enhanced ammonia detection and alarm system both inside and outside of Building 2.

B.    Work to be Performed
1.  Building 1
    a.  Install and commission temporary (skid-based) Building 1 refrigeration system
    b.  Install new piping for glycol
    c.  Remove all ammonia from and decommission existing Building 1 system
    d.  Install new air units in chilled spaces
    e.  Connect to new Building 2 system

2.  Building 2
    a.  Install and commission temporary (skid-based) Building 2 refrigeration system
    b.  Remove all ammonia from and decommission existing Building 2 system
    c.  Modify Building 2 system to meet reconfigured cooling needs as a result of combination of old refrigeration systems
    d.  Install new piping for glycol

      e.  Install new ammonia/glycol heat exchangers in chilled spaces
      f.  Install new condensors
      g.  Install ammonia scrubber system
      h.  Install Enhanced Ammonia Detection and Alarms
           i.  Full ammonia detection system installed inside Building 2 with the following functionalities – warning, alarm, shunt trip
          ii.  Ammonia detection system installed on exterior of Building 2 at both roof level and at five feet above ground level with the following functionalities – warning, alarm
      i.  Introduce ammonia to Building 2 and commission new system

3.  Comply with Applicable Codes and Standards as follows:
      a.  Upgrade to Current 2010 California Code Versions for the following:
           i.  Building
          ii.  Mechanical, Electrical, Plumbing, Fire, Energy
      b.  Follow the following applicable standards
           i.  ASHRAE 15 – 2007
          ii.  IIAR 2 – 2008 (including Addendum A)
      c.  Implement the following Codes:
           i.  ASME B31.5 - 2010
          ii.  ASME Boiler & Pressure Vessel Code, Sections VIII & IX – 2010